IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | |
|---|---|
| **TIMOTHY W. REPASS, Individually and On Behalf of All Others Similarly Situated,** § § § § | |
| | § **Civil Action No.** |
| **Plaintiff,** § | |
| § | **7:18-CV-107** |
| **v.** § | |
| § | |
| **TNT CRANE AND RIGGING, INC.** § | |
| § | |
| **Defendant.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Timothy Repass ("Named Plaintiff") on behalf of himself and all others similarly situated ("Class Members" herein) (Named Plaintiff and Class Members are collectively referred to herein as "Plaintiffs") bring this Fair Labor Standards Act ("FLSA") suit against the above-named Defendant under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended. Named Plaintiff shows as follows:

### I. NATURE OF SUIT

1. The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Defendant TNT Crane and Rigging, Inc. ("Defendant") has violated the FLSA by failing to pay its crane operators in accordance with the guarantees and protections of the FLSA. Defendant has failed and refused to pay its crane operators at time-and-one-half their regular rates of pay for all hours worked in excess of forty hours within a workweek. It has done so by knowingly permitting its crane operators to engage in compensable travel time and compensable preparatory and concluding work but nevertheless intentionally failing to pay those crane operators for any of that travel time or preparatory and concluding work. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendant's compensation policies, Named Plaintiff brings this action as a collective action pursuant to 29 U.S.C. § 216(b).

## II. PARTIES

3. Named Plaintiff Timothy Repass is an individual who resides in Harris County, Texas and is employed by Defendant within the meaning of the FLSA. Named Plaintiff was employed by Defendant from November 2017 through the present. He has consented to be a party-plaintiff in this action and his consent form is attached hereto as "Exhibit A."

4. The Named Plaintiff and Class Members are Defendant's current and former crane operators who worked as such for Defendant.

5. Defendant TNT Crane and Rigging, Inc. is a Texas for-profit corporation that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Houston, Texas, and it may be served with process by service on its registered agent for service, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

## III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter because Plaintiffs assert claims arising under federal law. Specifically, Plaintiffs assert claims arising under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper in the Midland Division of the United States District Court for the Western District of Texas. All or a substantial part of the events forming the basis of this suit occurred in Midland County, Texas, which is in this District and Division. Venue in this Court is therefore proper under 28 U.S.C. § 1391(b). Named Plaintiff Repass is an employee of Defendant, and has performed work for Defendant, in Midland County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action. Defendant thus resides in this district and division. 28 U.S.C. §1391(c). Venue in this Court is therefore proper under 28 U.S.C. § 1391(b)(1).

## IV. COVERAGE UNDER THE FLSA

8. At all relevant times, Defendant has acted, directly or indirectly, in the interest of an employer with respect to Named Plaintiff and the Class Members.

9. At all times hereinafter mentioned, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10. At all times hereinafter mentioned, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11. At all times hereinafter mentioned Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working

on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

12. At all times hereinafter mentioned, Named Plaintiff and Class Members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §207 and whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

## V. FACTUAL ALLEGATIONS

13. Defendant is crane and rigging company that provides services throughout North America, including the United States. It provides lifting services across the Permian Basin, including in Midland County. Defendant is one of the largest crane operators in the world and employs approximately 80 crane operators who work out of its Midland, Texas yard alone.

14. Named Plaintiff has worked as a crane operator for Defendant from November 2017 through the present.

15. In the performance of their work, Plaintiffs handle tools, equipment, and other materials that were manufactured outside of the State of Texas and outside of the State of New Mexico.

16. Named Plaintiff was employed by Defendant as a crane operator at Defendant's worksites in and around the Permian Basin, including Midland County, Texas. The Class Member crane operators are employed in all of the Defendant's locations.

17. For all times relevant to this action, as crane operator, the Plaintiffs' primary job duty for the Defendant has been the performance of manual, non-management work. The Plaintiffs' primary

job duty is not the performance of office, or non-manual work directly related to Defendant's management or general business operations, or those of its customers.

18. Rather, Plaintiffs spend most of their time performing manual tasks outside at jobsites in the oilfield, such as (1) rigging up and rigging down; (2) inspecting Defendant's cranes, (3) servicing Defendant's cranes; (4) completing Job Safety Analyses (JSAs); and (5) operating Defendant's cranes.  The job duties of the crane operators at each of the Defendant's locations was and is essentially the same.  As a result, each crane operator performed the same or similar job duties throughout Defendant's operations.

19. The daily and weekly activities of Plaintiffs were routine and largely governed by standardized plans, procedures, and checklists created by Defendant. Virtually every job function was predetermined by Defendant, including the data to compile and schedule of work and related work duties. The Plaintiffs were prohibited from varying their job duties outside of the predetermined parameters.

20. Plaintiffs did not direct the work of two or more employees at any time during their employment as crane operators.  Plaintiffs did not have the authority to hire or fire other employees, and their suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

21. Crane operators did not perform work that required knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; and they do not perform work in a recognized field of artistic or creative endeavor.

22. Defendant did not pay Named Plaintiff or Class Members on a salary or a fee basis pursuant to 29 C.F.R. §541.600.  Instead, Defendant paid Named Plaintiff and Class Members an hourly wage plus a per diem of at least $100 per day.

23. Named Plaintiff and Class Members worked long hours. The crane operators typically work no fewer than 64 hours, and often as much as 100 hours, per week. For example, during the pay period May 7, 2018 through May 13, 2018, Defendant paid Named Plaintiff for 96 hours; during the pay period May 14, 2018 through May 20, 2018, Defendant paid Named Plaintiff for 87 hours; and during the pay period May 21, 2018 through May 27, 2018, Defendant paid Named Plaintiff for 91 hours.

24. However, Defendant did not pay Named Plaintiff at all for any of the substantial amounts of Drive Time and Off the Clock Time, discussed below. Thus, during all times relevant to this action, in weeks in which they perform work for Defendant, Plaintiffs typically worked more than forty hours per week.

25. Named Plaintiff and Class Members were required to obtain and load fuel, diesel exhaust fluid (DEF), necessary paperwork, and water before driving to their jobsites. Without these items, and without performing the preparatory work in order to obtain them, Named Plaintiff and Class Members could not have performed their work for Defendant. Obtaining and loading these items was integral and indispensable to the performance of the crane operators' primary job duty for the Defendant—operating its cranes. Named Plaintiff and Class Members start their workday when they obtain these items; and Named Plaintiff and Class Members must obtain these items every day before driving to their jobsites. Named Plaintiff and Class Members most often obtained and obtain these items from Defendant's yard, which is located in Midland, Texas, and Defendant prefers that Named Plaintiff and Class Members obtain these items from Defendant's yard.

26. After performing this work at the Defendant's yard, Plaintiffs would then drive to their jobsites. The drives to the jobsites often take 3 or more hours.

27. When their shift at the jobsite ended for the day, Plaintiffs would drive back to Midland. On approximately half of their workdays, Plaintiffs returned to the yard the shop, where they continued to perform the work of filling out forms, tickets, and invoices and unloading the tools, materials, and equipment. Plaintiffs would then disperse back to their temporary or permanent residence for the night.

28. In short, Plaintiffs performed work that was integral and indispensable to their primary activities before arriving at the worksite; and, approximately half of the time, they continued performing work that was integral and indispensable to their principal activities upon their return from the worksite.

29. Defendant provided vehicles for Plaintiffs to drive to and from the jobsites. Defendant provided Plaintiffs Chevrolet Silverado 2500HDs. The Plaintiffs routinely drove these trucks with no trailer of any kind attached. The motor vehicles that Defendant provided to Named Plaintiff and Class Members to drive had a gross vehicle weight rating (GVWR) of 10,000 pounds or less.

30. Attached hereto as Exhibit "B" is a true and correct copy of a photograph of the placard affixed to the 2018 Chevrolet Silverado 2500 HD that Defendant has provided to Named Plaintiff. Defendant provided Chevrolet Silverado 2500 HDs, or similar, motor vehicles with a GVWR of 10,000 pounds or less to all of the Plaintiffs.

31. Named Plaintiff and Class Members operated vehicles with a GVWR of 10,000 pounds or less during every workweek during their employment with Defendant.

32. On average, Plaintiffs spent roughly 40 hours per week driving to and from the worksite ("Drive Time"). Defendant did not compensate Plaintiffs at all for any of this time.

33. Defendant had a policy and practice of failing and refusing to pay Named Plaintiff and Class Members for anything other than the work performed at the customers' jobsites.

34. As a result, Defendant failed and refused to pay Named Plaintiff and Class Members for their Drive Time. Defendant also failed and refused to Named Plaintiff and Class Members for working time for work performed at the yard, both before and after their shifts and the jobsites ("Off the Clock Time"). This often amounts to an additional 2-3 or more hours of uncompensated work per week.

35. Defendant was aware that Plaintiffs were performing work outside of their recorded hours. But Defendant did not and does not compensate Named Plaintiff or Class Members for any Drive Time to and from Defendant's shop or for their Off the Clock Time.

36. As a result, Defendant failed and refused to pay Named Plaintiff and Class Members for all overtime hours they worked.

37. Defendant did and does pay Named Plaintiff and Class Members at a rate of one-and-one-half times their regular rates of pay for some overtime hours; but it does not pay Named Plaintiff and Class Members at all for Drive Time or for their Off the Clock Time.

38. Defendant had notice that Plaintiffs expected to be paid for their Drive Time or Off the Clock Time. Plaintiffs communicated with their managers about the Drive Time and Off the Clock Time but were repeatedly told that Defendant would not pay for Drive Time or Off the Clock Time because the customer did not pay for Drive Time or Off the Clock Time.

39. Because, as indicated above, compensable Drive Time and Off the Clock Time occurred in weeks where Plaintiffs were working more than forty hours, Defendant wholly failed to pay Plaintiffs at all, much less at an appropriate overtime rate, for the Drive Time and Off the Clock Time.

40. Defendant has employed and is employing other individuals as crane operators who have performed the same job duties under the same pay provisions as Named Plaintiff, in that they have performed, or are performing, the same job duties, and have consistently worked in excess of forty hours in a workweek and have been denied any pay for Drive Time and Off the Clock Time and

thus overtime compensation at a rate of not less than one-and-one-half times their regular rates of pay.

41. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Named Plaintiff and the Class Members.

## VI. COLLECTIVE ACTION ALLEGATIONS

42. Named Plaintiff and the Class Member performed the same or similar job duties as one another in that they worked as, and performed the duties of, a crane operator in Defendant's worksites in Texas and New Mexico. Further, Named Plaintiff and the Class Members were subjected to the same pay provisions in that they were all paid on an hourly basis but were not compensated at the rate of at least one and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek. More specifically, Defendant knowingly refused to pay Named Plaintiff and the Class Members for their Drive Time or Off the Clock Time. Thus, the Class Members are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

43. Defendant's failure to compensate employees for hours worked in excess of 40 in a workweek as required by the FLSA results from a policy or practice of refusing to pay its crane operators for Drive Time or Off the Clock Time. This policy or practice is applicable to the Named Plaintiff and all Class Members. Application of this policy or practice does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Rather, the same policy or practice that resulted in the non-payment of overtime compensation to Named Plaintiff also applied to all Class Members. Accordingly, the "Class Members" are properly defined as:

> **All current and former crane operators of Defendant who were paid by the hour in the last three years.**

## VII. CAUSE OF ACTION: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT

44. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2), by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as stated herein above, for workweeks longer than 40 hours without compensating such employees for their work in excess of forty hours per week at rates no less than one-and-one-half times their regular rates for which they were employed. Defendant has acted willfully in failing to pay Plaintiff and the Class Members in accordance with applicable law.

## VIII. PRAYER FOR RELIEF

WHEREFORE, cause having been shown, Named Plaintiff prays for an expedited order certifying a class and directing notice to putative class members pursuant to 29 U.S.C. § 216(b) and, individually, and on behalf of any and all such class members, on trial of this cause, judgment against Defendant as follows:

a. For an Order pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), finding Defendant liable for unpaid back wages due to Plaintiff (and those who may join in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who may join the suit);

b. For an Order awarding Plaintiff (and those who may join in the suit) the taxable costs and allowable expenses of this action;

c. For an Order awarding Plaintiff (and those who may join in the suit) attorneys' fees; and

d.      For an Order awarding Plaintiff (and those who may join in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

e.      For an Order awarding Plaintiff declaratory and injunctive relief as necessary to prevent the Defendant's further violations, and to effectuate the purposes, of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*; and

f.      For an Order granting such other and further relief, at law or in equity, as may be necessary and/or appropriate.

Respectfully Submitted,

**MORELAND LAW FIRM, P.C.**
700 West Summit Drive
Wimberley, Texas 78676
(512) 782-0567
(512) 782-0605 – telecopier

By: */s/ Edmond S. Moreland, Jr.*
    Edmond S. Moreland, Jr.
    State Bar No. 24002644
    edmond@morelandlaw.com

Daniel A. Verrett
Texas State Bar No. 24075220
daniel@morelandlaw.com
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746
Tel: (512) 782-0567
Fax: (512) 782-0605

**ATTORNEYS FOR PLAINTIFF**