IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| TIMOTHY W. REPASS and WILLIAM SCOTT McCANDLESS, Individually and On Behalf of All Others Similarly Situated, § § § § § | |
| Plaintiff, § | Civil Action No. |
| § | MO:18-CV-107-DC-RCG |
| v. § § | |
| TNT CRANE AND RIGGING, INC. § § | |
| Defendant. § § | |

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND FOR REPRESENTATIVE DISCOVERY

### I.     Introduction

TNT Crane & Rigging, Inc. ("TNT") did not pay its crane operators all overtime owed to them, in violation of the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). The Court certified this case as a FLSA collective action, allowing other crane operators who worked out of Defendants' Houston, San Antonio, or Midland yards to join the case. After notice went out, thirty-seven additional individuals opted in. Since then, three of those opt-in Plaintiffs have withdrawn their consents to join. At present, there are 36 individuals in this case.

On **August 29, 2019**, Defendant deposed Named Plaintiff Repass. On **December 11, 2019**, Defendant served interrogatories, requests for production, and requests for admission on Named Plaintiff Repass. (**Exh. 1** hereto). Repass timely responded to that discovery on January 10, 2020. On that same day, **January 10, 2020**, Defendant propounded interrogatories, requests for production, and requests for

1

admission on the other 38 Plaintiffs. (**Exh. 2** hereto).[1] All Plaintiffs timely objected and/or responded to that discovery on April 10, 2020. Previously, on **February 7, 2020**, Defendant propounded a second set of interrogatories on all 39 plaintiffs consisting of the same single question regarding the conduct of this case as a Rule 23 class action. (*See Id.*). Plaintiffs objected and responded to that round of discovery on May 29, 2020. Nine days prior, on **May 20, 2020**, Defendant propounded a third set of interrogatories and a second set of requests for production on all 39 Plaintiffs. (*Id.*). The Plaintiffs objected and/or responded to that round of discovery on June 19, 2020. On **June 17, 2020** (five months after Repass served his objections and responses and two months after the other 38 plaintiffs served theirs), Defendant's counsel sent a letter to set up the filing of a motion to compel additional responses to its first several sets of discovery to all of the Plaintiffs. (**Exh. 3** hereto). Defendant followed that letter up with an email of **June 26, 2020** as a predicate to a motion to compel further responses to its third set of interrogatories and second requests for production. (*Id.*). On **July 30, 2020**, Defendant served a fourth set of interrogatories on all Plaintiffs in the case. (*See* **Exh. 2**). All told, from December 11, 2019 through July 30, 2020, Defendant has served **seven written discovery instruments** on all Plaintiffs in this case.

Defendant has also taken the deposition of Named Plaintiff Repass. As for the other Plaintiffs, Defendant had originally requested the depositions of 18 more of them, or over 48% of the then-existing opt-in class. Plaintiffs objected to this request as excessive, and, as a compromise, the parties agreed to proceed with depositions of 12 of the Plaintiffs. In July 2020, Plaintiffs' counsel presented for deposition two of the opt-in Plaintiffs, one from the Houston yard and one from the San Antonio yard, and has offered to present Named Plaintiff McCandless and three additional opt-in Plaintiffs in August 2020.

In short, Plaintiffs have responded to repeated sets of written discovery and they have worked with Defendant to schedule multiple depositions in this case. In spite of the Plaintiffs' extensive efforts

---

[1] Exhibit 2 contains all of the written discovery that Defendant has propounded to date on one of the opt-in Plaintiffs. Defendant has served the same or similar sets of written discovery on all of the other Plaintiffs in the case.

to provide Defendant the discovery it claims to need, on **July 27, 2020**, Defendant's counsel sent an email stating that "given the difficulties we've had scheduling this group of depositions and the stark differences in testimony from the plaintiffs we have deposed, we are going to need to depose all the plaintiffs in [*sic*] who are currently still in the lawsuit." (**Exh. 4** hereto).  But Defendant's counsel did not explain how "difficulties" in scheduling or "differences in testimony" necessitates exhaustive individualized discovery. Putting aside the non-sensical predicate for "need[ing] to depose all the plaintiffs," Defendant's repeated sets of individualized discovery (and, as an adjunct, a threat of a motion to compel), this request for the depositions of all of the Plaintiffs has revealed what Defendant's discovery strategy has been all along—to abuse the Plaintiffs.  Moreover, Defendant's repeated rounds of written discovery and new request to depose all Plaintiffs is directly contrary to the spirit and purpose of representative actions such as this one (not to mention the Parties' agreement regarding the number of depositions of the Plaintiffs). Consequently, while they have assumed that Defendant was acting in good faith, they now see Defendant's use of the discovery tools for what they are—abusive—and file this motion to request that the Court intervene.

      To date, Plaintiffs have refrained from asking the Court to intervene both in the spirit of cooperation with the Defendant and in the interest of attempting to avoid the time and costs associated with a dispute such as this. But Plaintiffs have reached their breaking point; and, in order to correct Defendant's past abuses and prevent further abusive discovery behavior by the Defendant, have determined that the Parties require guidance from the Court going forward.

      Individualized discovery, such as the discovery repeatedly served by Defendant, is inappropriate in FLSA collective actions. Indeed, representative discovery to the plaintiff class (and not individualized discovery) is the norm in FLSA cases and advances the purpose and usefulness of the collective action mechanism. Representative discovery is especially appropriate here because there is a common theory of liability for all plaintiffs. Defendant's individualized discovery requests are an abuse of discovery just

to drum up Plaintiffs' costs, and waste their resources.

To protect against Defendant's abusive, unlimited class discovery, Plaintiffs now request the Court enter a protective order regarding all discovery requests that Defendant has propounded, and enter a representative discovery plan for the class going forward. The Court should order proportional, representative discovery that comports with the Rules and FLSA precedent.

## II.     Argument & Authorities

### A. The Court "must limit" abusive or disproportionate discovery.

The Court has broad discretion to control and, where appropriate, to deny, limit, or qualify discovery. FED. R. CIV. P. 26(c). Rule 26(c)(1) allows for a party from whom discovery is sought to move for a protective order to relieve the party from discovery obligations. "The court may, for good cause, issue an order to protect a party … from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The decision as to whether to restrict discovery and grant a protective order is within the sound discretion of the court. *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982); *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999).

Indeed, the Court "**must** limit the frequency or extent of discovery" if it determines that: (a) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; **or** (b) the discovery is not proportional to the need of the case, considering … the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2)(C) (emphasis added).

### B. Concerns for fair and proportionate discovery are heightened in FLSA collective actions.

The collective action mechanism affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources" and "[t]he judicial systems benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S.

165, 170 (1989). So as a starting point, the use of individualized discovery toward FLSA class members is generally not appropriate, as it defeats the collective-action goals of the FLSA. *See Valdez v. Superior Energy Svcs. Inc.*, Nos. 2:15-cv-144, 2:15-cv-374, 2017 WL 357824, at *2 (S.D. Tex. Aug. 9, 2017) ("[G]iven the Fifth Circuit's recognition of the 'representative' character of FLSA collective action[,] … representative discovery … is appropriate in this case."); *Nelson v. American Standard*, Nos. 2:07-CV-10-TJW-CE, 2:08-CV-390-TJW-CE, 2009 WL 4730166, at *2-3 (E.D. Tex. Dec. 4, 2009) ("The Court finds that limiting discovery in an FLSA collective action to a relevant sample minimizes the burden imposed on the plaintiffs while affording the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses." (internal quotation omitted)); *see also Cranney v. Carriage Servs., Inc.*, No 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3-5 (D. Nev. June 16, 2008) (limiting individualized discovery in an FLSA case to 10% of a relevant combination of workers); *Smith v. Lowes Home Ctrs.*, 236 F.R.D. 354, 356-58 (S.D. Ohio 2006) (ordering a representative sample of 6% of randomly selected individuals from the opt-in plaintiffs in an FLSA case); *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 468-69 (N.D. Ill. 1992) (finding that discovery should be conducted on a class-wide basis in an FLSA collective action rather than an individual basis in light of the "tremendous burden" of individualized discovery on plaintiff's counsel).

Moreover, in this, as in most an FLSA collective actions, most or all of the discoverable information and materials regarding the plaintiffs' job duties, wages, and time worked is **already** (and often **exclusively**) in the hands of the defendant. *See Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234 (D.N.J. 2013). The FLSA, in fact, mandates that employers maintain such records **and** that they be readily available for inspection upon 72-hour notice. 29 C.F.R. §§ 516.2, 516.7. Courts have described the general unhelpfulness of obtaining useful discovery from FLSA plaintiffs:

> Indeed, much of the key factual information defendants need from each plaintiff, such as their dates of employment, hours worked, supervisors and salary, is likely already in [the defendant's] possession and control. Obtaining hundreds of 'boiler plate' answers from the plaintiffs is not likely to 'advance the ball.'

5

*Goodman*, 292 F.R.D. at 234.

The United States Supreme Court has long recognized this same reality and explained the policy reasons behind the emphasis on obtaining FLSA discovery from the employer:

> The remedial nature of this statute and the great public policy which it embodies … militate against making [the plaintiff's] burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under [the FLSA] to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946). It is for this reason that an FLSA plaintiff need only "produce[ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687.

**C. Representative discovery from plaintiffs is routine in FLSA collective actions.**

To meet such a just and reasonable inference, FLSA "plaintiffs need not present testimony of every member of the collective action to prove their case and recover damages." *Stillman v. Staples*, *Inc.*, No.07-849 (KSH), 2009 WL 1437817, at *18 (D.N.J. May 15, 2009); *Falcon v. Starbucks Corp.*, 580 F.Supp.2d 528, 540 (S.D. Tex. 2008) ("Courts have allowed the use of representative testimony in cases involving allegations of unpaid overtime" (citing, *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687-88, (1946); *Brennan v. General Motors Acceptance Corp*., 482 F.2d 825, 829 (5th Cir.1973)).

Courts instead typically allow the testimony of representative employees to prove FLSA violations with respect to all similarly situated opt-in plaintiffs. *Martin v. Selker Bros. Inc.,* 949 F.2d 1286, 1298 (3d Cir. 1991). The similarity of the witnesses who do testify permit the court to draw a reasonable inference regarding the job title, job description, work performed, the number of hours worked, and the compensation received among the non-testifying employees. *Stillman*, 2009 WL 1437817, at *18. Because such "just and reasonable inferences" can be drawn from a representative sample, courts have consistently held that FLSA liability may be established without requiring testimony

or discovery from all, or even a substantial number, of plaintiff employees.[2] The Fifth Circuit embraces treating FLSA collective actions as "a representative action throughout discovery." *Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995).

At the same time, representative discovery does not hinder the defendant employer from developing its case. "[L]imiting discovery in an FLSA collective action to a relevant sample minimizes the burden imposed on the plaintiffs while affording the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses." *Nelson v. Amer. Standard, Inc.*, 2009 WL 4730166, at *3 (internal quotations omitted).

### D. Representative discovery going forward is appropriate in this case.

Representative discovery is appropriate in this case because there is a common theory of liability for all plaintiffs—the illegal failure to pay for preparatory and concluding work, including travel time to and from the Plaintiffs' job sites. Plaintiffs and the opt-in Plaintiffs will prove their claims using (primarily) Defendant's own records, policies, and the testimony of representative employees. There can be no legitimate doubt that the vast majority of the relevant issues with respect to every opt-in Plaintiff will be largely the same repetitive issues, based on the same repetitive arguments. Thus, there is no need

---

[2] *See, e.g., Chao v. Self Pride, Inc.*, 232 F.App'x 280, 286 (4th Cir. 2007) ("[T]he FLSA imposes no requirement that the Secretary call each individual employee and attempt to reconstruct, from recollection, the time worked in the absence of time records."); *Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988) ("The fact that several employees do not testify does not penalize their claim[.]"); *Donovan v. New Floridian Hotel. Inc.,* 676 F.2d 468, 472 (11th Cir. 1982) (same); *Donovan v. Bel-Loc Diner Inc.,* 780 F.2d 1113, 1116 (4th Cir. 1985) ("Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees."); *McGrath v. City of Philadelphia,* No. CIV. A. 92-4570, 1994 WL 45162 (E.D. Pa. Feb. 10, 1994) (holding individualized discovery inappropriate in FLSA cases, especially with respect to liability issues); *Cranney v. Carriage Svcs., Inc.*, 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3 (D. Nev. Jun. 16, 2008) ("Permitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources."); *Adkins v. Mid-American Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Il. 1992) ("Because the court has already determined the plaintiffs are 'similarly situated,' individual depositions and interrogatories are not appropriate."); *see also Prentice v. Fund for Pub. Interest Research, Inc.*, No. C-06-7776 SC, 2007 WL 2729187, at *14 (N.D. Cal. Sept. 18, 2007) (explaining, when certifying collective action, that "individualized discovery is rarely appropriate in FLSA collective actions…. Including a warning [in class notice] about possible discovery when that **discovery is unlikely** will serve no purpose other than deterring potential plaintiffs …." (emphasis added)).

to conduct extensive, exhaustive, time consuming, and costly discovery of all the opt-in Plaintiffs, which is not likely to result in much if any unique evidence. This is particularly true where Defendant has the burden of proving its practices were good faith attempts to comply with the FLSA—burdens which existed long before this suit was filed and where Defendant has already had unfettered access to potential witnesses, corporate documents, payroll records, work schedules, emails, and virtually all of the relevant information that Defendant claims to need from the opt-in Plaintiffs.

Much of the information Defendant seeks is the type of information that the FLSA's record-keeping requirements mandate defendants to maintain and make available within 72 hours, or it consists of information and documents that employees (particularly former employees, as are the opt-ins) are highly unlikely to be aware of or even have in their possession. For example, Defendant's written discovery to the opt-in Plaintiffs seek information regarding compensation, policies, locations of the Plaintiffs' work, the Defendants' customers for whom the Plaintiffs worked, and dates of employment. (**Exh. 2** hereto). Documents required to respond to many of these requests would include payroll, personnel, human resources, job, field, or dispatch tickets, and other records in Defendant's possession. Moreover, there can be no doubt that Defendant has an alternative means of seeking this information, to the extent it really believes it to be relevant. Indeed, this information can be obtained through Defendant's own corporate documents, records, directives, emails, and witnesses.

Here, there is a legitimate need to enter a protective order which protects the opt-in Plaintiffs from what has become Defendant's unlimited and abusive discovery. Not only do Defendant's ever-expanding discovery requests pose a significant and unnecessary burden and expense on Plaintiffs and the opt-in Plaintiffs, but such requests also defeat the fundamental representative basis of the collective action mechanism granted to employees under the FLSA. This is particularly true in light of the fact that Defendant operates under the same or similar unlawful practices and policies regarding payment of the Plaintiffs' travel time, regardless of any individualized factors which might dictate more expansive

discovery.

### E. Going forward, the Court should limit Defendant's discovery in number of Plaintiffs and in the number of, and time allowed for, depositions.

Although Plaintiffs have made good faith efforts to answer Defendant's repeated—and what is now clearly abusive—written discovery requests and requests for depositions, going forward, Defendant's written discovery requests and depositions should be limited to the two Named Plaintiffs and six of the opt-in Plaintiffs (two from each yard), selected at random. The six opt-in Plaintiffs represent 17.6% of the opt-in class; and all eight Plaintiffs together represent 22.2% of all Plaintiffs currently in the case. As far as written discovery is concerned, Plaintiffs request that Defendant be limited to using—either in motion practice or at trial, and specifically insofar as it relates to any motion to compel that Defendant may in the future file—only the written discovery responses of these eight Plaintiffs among the responses that Plaintiffs have already served. This percentage is higher than that typically allowed by courts, which has frequently ranged from less than 5%[3] to 10%[4] to 15%[5] of class members. Plaintiffs concede that they have all objected and/or responded to the Defendant's written discovery to date, with the exception of Defendant's fourth set of interrogatories (served on July 30, 2020). However, given that Defendant's discovery efforts throughout this case have now been revealed for what they have been all along—abusive—Plaintiffs now ask the Court to intervene and permit the Defendant to use only the responses of the two Named Plaintiffs and six opt-in Plaintiffs.

Plaintiffs' request for representative discovery is in line with at least one order that this Court has

---

[3] *E.g.*, *Craig v. Rite Aid Corp.*, C.A. No. 4:08-cv-2317, 2011 WL 9686065 (M.D.Pa. Feb. 7, 2011) (50 out of 1073 opt-in plaintiffs, or 4.66%); *Smith v. Lowes Home Ctrs.*, 236 F.R.D. 354, 356-58 (S.D. Ohio 2006) (6%).
[4] *E.g.*, *Cranney v. Carriage Servs., Inc.*, No 2:07-cv-01587-RLH-PAL, 2008 WL 2457912, at *3-5 (D. Nev. June 16, 2008); *see also Bradford v. Bed Bath & Beyond, Inc.*, 184 F.Supp.2d 1342, 1344 (N.D. Ga. 2002) (31 out of 300 opt-ins); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 234-35 (D.N.J. 2013) (limiting written discovery to 60 out of 572, or 10.5%, and depositions to 35 out of 572, or 6.12%); *Boudreaux v. Schlumberger Tech. Corp.*, 6:14-cv-02267-DDD-CBW, ECF No. 212, at *1 (W.D. La. Sept. 26, 2017) (restricting defendant to 30 depositions from class with 293 plaintiffs).
[5] *E.g.*, *Kesley v. Entertainment U.S.A. Inc.*, No. CV-14-01105-PHX, 2015 WL 4064715, at *2-3 (D. Arizona July 2, 2015) (class of 66 opt-in plaintiffs).

entered in an FLSA case. *Kilmon v. Saulsbury Ind., Inc.*, MO:17-CV-00099-DC, Doc. 101, *1 (July 16, 2018) (Counts, J.)(limiting the number of depositions of opt-in plaintiffs to 10, and permitting written discovery from up to 20 opt-in plaintiffs in a case with approximately 60 plaintiffs). It is also in line case law from other federal district courts around the State of Texas. The Northern District of Texas has ordered representative discovery on 20% of a class of 93. *See Halton-Hurt v. TJX Co., Inc.*, C.A. No. 3:09-CV-2171-N, 2012 WL 10978236 (N.D. Tex. Apr. 4, 2012). The Eastern District of Texas has imposed representative discovery on 20% of a class of 45. *Matthews v. Priority Energy Svcs., LLC*, No. 6:15-cv-00448-RWS, ECF No. 107 (E.D. Tex. Mar. 8, 2017). And the Southern District of Texas has limited discovery to 15 out of a 67-plaintiff class. *Valdez v. Superior Energy Svcs. Inc.*, Nos. 2:15-cv-144, 2:15-cv-374, 2017 WL 3575824, at *2 (S.D. Tex. Aug. 9, 2017).

The two Named Plaintiffs and six opt-ins represents a general sample, allowing a fair representation of Plaintiffs and minimizing their discovery burden going forward, while giving Defendant fair opportunity to evaluate class members' claims.

In addition, as part of a representative discovery plan, courts presiding over FLSA cases also frequently limit the number of plaintiff depositions permitted. *See*, *e.g.*, *Boudreaux v. Schlumberger Tech. Corp.*, 6:14-cv-02267-DDD-CBW, ECF No. 212, at *1 (W.D. La. Sept. 26, 2017); *Rindlefleish v. Gentiva Health Servs., Inc.*, No. 1:10-CV-3288-SCJ, 2011 WL 7662026, at *3-5 (N.D. Ga. Dec. 29, 2011); *Russell v. Ill Bell Tel.*, No. 08 CV 1871, 2009 WL 1209025, at *1 (N.D. Ill. Apr. 30, 2009); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2007 WL 1341774, at *13 (D. Kan. May 4, 2007).

Because Plaintiffs' relevant knowledge is limited and the issues in dispute are of class-wide resolution, there is no need for each opt-in plaintiff to be subject to an extended deposition. Courts have frequently put time and subject matter limitations in place for FLSA plaintiff depositions. *E.g.*, *Allen v. Sears Roebuck and Co.*, C.A. No. 07-CV-11706, 2010 WL 1417644, at *3 (E.D. Mich. Apr. 5, 2010) (limiting depositions to three hours each); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292

F.R.D. 230, 234 (D.N.J. 2013) (staggering deposition time limits for named (7 hours) and opt-in (3.5 hours) plaintiff).

Plaintiffs therefore request that depositions of the opt-in Plaintiffs be limited to six opt-in Plaintiffs and a total of two hours each. Of course, Plaintiffs' request anticipates that these six depositions will occur in addition to those of the two Named Plaintiffs, one of which has already taken place and the other of which is currently scheduled for August 19, 2020.

### III. Conclusion and Prayer

For these reasons, Plaintiffs request the Court to issue a protective order to define the scope of representative discovery going forward by limiting written discovery and depositions to six of the opt-in Plaintiffs and specifying that depositions extend no longer than two hours, except for good cause shown as to a specific deposition. Plaintiffs therefore request that the Court issue a protective order quashing the outstanding discovery, and outlining a system for proper representative discovery for the class.

Respectfully submitted,

**MORELAND VERRETT, P.C.**

By: /s/Edmond S. Moreland, Jr.
    Edmond S. Moreland, Jr.
    State Bar No. 24002644
    edmond@morelandlaw.com

700 West Summit Drive
Wimberley, Texas 78676
Telephone: (512) 782-0567
Telecopier: (512) 782-0605

Daniel A. Verrett
State Bar No. 24075220
daniel@morelandlaw.com
The Commissioners House at Heritage Square
2901 Bee Cave Road, Box L
Austin, Texas 78746

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I have conferred with counsel for Defendant regarding this motion. Defendant **opposes** this motion.

*/s/ Edmond S. Moreland, Jr.*
Edmond S. Moreland, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 31st day of July 2020, I electronically submitted the foregoing document for filing using the Court's CM/ECF system, which will serve a true and correct copy of the foregoing document upon all counsel of record.

*/s/ Edmond S. Moreland, Jr.*
Edmond S. Moreland, Jr.